JOURNAL ENTRY AND OPINION. *Page 3 
{¶ 1} Defendant-appellant, T.W.[1] ("appellant"), appeals the juvenile court's finding that he is delinquent of aggravated robbery with firearm specifications. For the reasons set forth below, we affirm.
 {¶ 2} On February 23, 2007, the state filed a delinquency complaint against appellant alleging he committed aggravated robbery, in violation of R.C. 2911.01(A)(1), with one and three year firearm specifications. Appellant stipulated to his age and venue but denied the allegations in the complaint.
 {¶ 3} The case proceeded to trial on August 21, 2007. At trial, the state presented the victim, D.M., for examination. D.M. testified that, on November 2, 2006, he was waiting at a bus stop when appellant and two companions approached. Appellant lifted his shirt, displayed a firearm in his waistband, and demanded that D.M. empty his pockets. D.M. refused and appellant pulled the firearm further from his waistband, displaying the gun further. Afraid, D.M. ran from appellant. D.M. described the firearm as a silver revolver made of steel that had a brown wood handle with screws.
 {¶ 4} D.M. explained that he knew of appellant prior to the incident because the two attended the same school. Additionally, on numerous occasions prior to the incident, D.M. had noticed appellant at the library. D.M., however, did not recognize the appellant's two companions. *Page 4 
 {¶ 5} D.M. further testified that numerous physical altercations occurred following the incident. More specifically, appellant approached D.M. and started a physical fight at a Dairy Mart a few weeks following the incident. Additionally, a month after the incident at the bus stop, the two fought at school.
 {¶ 6} At the summation of the state's case, appellant moved for acquittal pursuant to Crim.R. 29(A). The trial court denied his motion.
 {¶ 7} Appellant then testified on his own behalf. He admitted that he was present at the bus stop on November 2, 2006, but maintained that he was there with the two companions to "provide some protection in case it wasn't a one-on-one fight." He explained that D.M. and a group of boys had previously attacked one of appellant's companions. It was that individual who displayed the firearm, not appellant, and he was not aware of whether the individual had the firearm prior to its display. Appellant asserted that he immediately fled the scene when he saw the weapon.
 {¶ 8} After testifying, appellant rested his case and renewed his motion for acquittal. Again, the trial court denied his request.
 {¶ 9} In a journalized entry dated August 28, 2007, the trial court found appellant delinquent by reason of having committed aggravated robbery with one and three year firearm specifications. On that same date, the trial court ordered appellant to a minimum one-year commitment for the aggravated robbery charge at the Ohio Department of Youth Services but not to exceed attainment at age 21. The *Page 5 
court further ordered the sentence to be served subsequently and consecutively to a one year commitment for the firearm specifications, for a total two-year minimum commitment.
 {¶ 10} Appellant now appeals and presents two assignments of error for our review. Appellant's first assignment of error states:
 {¶ 11} "The trial court erred by denying appellant's Crim.R. 29 motion because the state presented insufficient evidence to establish the elements of the charges."
 {¶ 12} Motions for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 13} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find *Page 6 
reasonable doubt." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394.
 {¶ 14} Within this assignment of error, appellant argues that the state failed to present evidence establishing he possessed a deadly weapon, dangerous ordnance, or a firearm in his possession. More specifically, he maintains that the state failed to establish that the firearm was loaded and operable. We find appellant's argument unpersuasive.
 {¶ 15} Appellant was found delinquent of aggravated robbery with one and three year firearm specifications. Aggravated robbery is defined in R.C. 2911.01 as the following:
 {¶ 16} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 17} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 {¶ 18} "(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
 {¶ 19} "(3) Inflict, or attempt to inflict, serious physical harm on another." *Page 7 
 {¶ 20} "Deadly weapon" is defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 21} The pertinent portion of R.C. 2923.11(K) defines "dangerous ordnance" as "[a]ny automatic or sawed-off firearm, zip-gun, or ballistic knife."
 {¶ 22} R.C. 2923.11(B)(1) defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."
 {¶ 23} R.C. 2923.11(B)(2) further provides the following:
 {¶ 24} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 25} Viewing the evidence in a light most favorable to the state, we find that the state presented sufficient evidence that appellant possessed a firearm. D.M. testified that appellant demanded his property while he brandished a firearm. D.M. described the weapon in detail as a silver metal revolver that had a brown wood handle with screws. D.M. further testified that he believed the firearm to be real and not a BB gun. Appellant represented that the firearm was operable when he *Page 8 
threatened to discharge the weapon by pulling it further from his waistband after D.M. refused to surrender his property. The foregoing evidence sufficiently establishes that appellant committed an aggravated robbery with a firearm. Accordingly, appellant's first assignment of error is without merit.
 {¶ 26} Appellant's second assignment of error states:
 {¶ 27} "The trial court's delinquency findings were against the manifest weight of the evidence."
 {¶ 28} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 29} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury [fact finder] that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 30} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 72 *Page 9 
L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 31} In rendering this determination, however, an appellate court must defer to the fact finder's decisions regarding the witnesses' credibility as the fact finder is in a better position to observe the witnesses' demeanor and weigh their credibility. State v. Ross (Oct. 12, 2000), Cuyahoga App. No. 77126, citing State v. DeHass (1969),10 Ohio St.2d 230, 227 N.E.2d 212. Moreover, the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Martin, supra.
 {¶ 32} Within this assignment of error, appellant argues that his conviction was against the manifest weight of the evidence because his testimony was more credible than the testimony of D.M. First, appellant contends that D.M.'s testimony is not credible because he changed his story to police that appellant possessed a weapon only after the two engaged in physical altercations weeks after the alleged robbery. In support of this argument, appellant directs this court to his own testimony where he asserted that the police report did not indicate that D.M. informed the police of the use of the firearm. Other than appellant's own self-serving *Page 10 
statement, there is no evidence in the record to support appellant's allegations. Appellant did not present the alleged police report and D.M. did not admit to any such assertions. Therefore, we find appellant's contention in this regard meritless.
 {¶ 33} Additionally, while the jury also heard testimony from appellant denying that he was the individual with the firearm, the court apparently chose to believe the testimony of D.M. The court is in a better position to weigh the credibility of D.M.'s testimony during trial and the statements made by appellant. The court did not lose its way merely because it chose to believe the state's evidence and reject appellant's argument that he was not the individual with the firearm.
 {¶ 34} Upon our review of the record as a whole, we find that the court, as trier of fact, did not clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed. Therefore, appellant's second assignment of error is overruled.
Judgment affirmed.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
PATRICIA ANN BLACKMON, P.J., and MELODY J. STEWART, J., CONCUR
[1] This court protects the identity of all parties in juvenile court cases. *Page 1